# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| **RICARDO MAXWELL, SR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MDL NO. 2873** |
| | ) | |
| | ) | **Master Docket No: 2:18-mn-2873-RMG** |
| | ) | |
| | ) | **JUDGE RICHARD GERGEL** |
| | ) | |
| | ) | **Civil Action No.: _____** |
| | ) | |
| **v.** | ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| **3M COMPANY (f/k/a MINNESOTA** | ) | |
| **MINING AND MANUFACTURING** | ) | |
| **COMPANY);** | ) | |
| **AGC CHEMICALS AMERICAS INC.;** | ) | |
| **ALLSTAR FIRE EQUIPMENT CO.;** | ) | |
| **AMEREX CORPORATION;** | ) | |
| **ARCHROMA U.S., INC.;** | ) | |
| **ARKEMA, INC.;** | ) | |
| **BASF CORPORATION;** | ) | |
| **CARRIER FIRE & SECURITY** | ) | |
| **AMERICAS CORPORATION** | ) | |
| **(f/k/a UTC FIRE & SECURITY** | ) | |
| **AMERICAS CORPORATION, INC.);** | ) | |
| **CARRIER GLOBAL CORPORATION;** | ) | |
| **CB GARMENT, INC.;** | ) | |
| **CHEMDESIGN PRODUCTS, INC.;** | ) | |
| **CHEMGUARD, INC.;** | ) | |
| **CHEMICALS INCORPORATED;** | ) | |
| **CHUBB FIRE, LTD;** | ) | |
| **CLARIANT CORP.;** | ) | |
| **CORTEVA, INC.;** | ) | |
| **DAIKIN AMERICA, INC.;** | ) | |
| **DEEPWATER CHEMICALS, INC.;** | ) | |
| **DUPONT DE NEMOURS, INC. (f/k/a** | ) | |
| **DOWDUPONT, INC.);** | ) | |
| **DYNAX CORPORATION;** | ) | |
| **EIDP, INC. (f/k/a E.I. DU PONT DE** | ) | |
| **NEMOURS AND COMPANY);** | ) | |
| **GLOBE MANUFACTURING** | ) | |

1

COMPANY LLC;                              )
HONEYWELL SAFETY PRODUCTS    )
USA, INC.;                                      )
INNOTEX CORP.;                           )
JOHNSON CONTROLS, INC.;          )
KIDDE PLC;                                    )
L.N. CURTIS & SONS;                     )
MALLORY SAFETY AND SUPPLY,    )
LLC                                               )
MATLICK ENTERPRISES, INC.        )
(d/b/a UNITED FIRE EQUIPMENT    )
COMPANY)                                    )
MILIKEN & COMPANY;                   )
MINE SAFETY APPLIANCES CO.,     )
LLC;                                              )
MUNICIPAL EMERGENCY             )
SERVICES, INC.;                            )
NATION FORD CHEMICAL            )
COMPANY;                                   )
NATIONAL FOAM, INC.;               )
PACIFIC AVENUE CAPITAL           )
PARTNERS MANAGEMENT LLC;    )
PBI PERFORMANCE PRODUCTS,    )
INC.;                                              )
PERIMETER SOLUTIONS, LP         )
RICOCHET MANUFACTURING CO.,  )
INC;                                               )
SAFETY COMPONENTS FABRIC     )
TECHNOLOGIES, INC;                   )
SOUTHERN MILLS, INC.;              )
STEDFAST USA, INC.;                   )
THE CHEMOURS COMPANY;          )
CHEMOURS COMPANY FC, L.L.C.   )
TYCO FIRE PRODUCTS LP, AS       )
SUCCESSOR-IN-INTEREST TO THE  )
ANSUL COMPANY;                        )
UNITED TECHNOLOGIES               )
CORPORATION (n/k/a RTX            )
CORPORATION);                          )
UTC FIRE & SECURITY AMERICAS  )
COPORATION, INC.                       )
VERIDIAN LIMITED;                     )
W.L. GORE & ASSOCIATES, INC.     )
WITMER PUBLIC SAFETY GROUP   )
          Defendants.                        )

2

Plaintiff, Ricardo Maxwell, Sr., by and through his undersigned counsel, brings this action against the above-named Defendants and alleges upon information and belief as follows:

**INTRODUCTION**

1.      Plaintiff brings this action for damages for personal injury resulting from exposure to aqueous film-forming foams ("AFFF") and/or firefighter turnout gear ("TOG") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.      AFFF is a specialized substance designed to extinguish extremely hot fires involving materials including but not limited to alcohol, petroleum greases, and other flammable or combustible liquids and gases ("Class B Fires"). AFFF was used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B Fires.

3.      TOG is personal protective equipment designed for heat and moisture resistance to protect firefighters in hazardous situations. Most turnout gear is made of a thermal liner, a moisture barrier, and an outer layer. The inner layers contain PFAS, and the outer layer is often treated with additional PFAS.

4.      Defendants, individually and collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFFs with knowledge it contained highly toxic and bio persistent PFAS, which would expose end users of the product to the risk associated with PFAS. Further, Defendants designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF or TOG products which contained PFAS for use in firefighting.

3

5.      The AFFF and/or TOG containing PFAS was used in fire emergency responses, fire-suppression systems, live fire training, and fire preparedness equipment testing ("Firefighting Activities").

6.      PFAS binds to proteins in the blood of humans exposed to the material and remain and persists over long periods of time. Due to their unique chemical structure, PFAS accumulate in the blood and bodies of the exposed individuals.

7.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, PFAS remain in the human body and present significant health risks to humans.

8.      From approximately January 1980 to December 2013, Plaintiff worked as a firefighter at the Beekman Fire Department, located in Cincinnati, Ohio and. The fire department stored and used Defendants' AFFF containing PFAS chemicals and/or their precursor chemicals in Firefighting Activities.

9.      During his career as a firefighter, Plaintiff regularly used and was exposed to Defendants' AFFF containing PFAS chemicals.

10.     Plaintiff also regularly wore and was exposed to Defendants' TOG containing PFAS chemicals while he was engaged in Firefighting Activities.

11.     Defendants' PFAS-containing AFFF or TOG products were used by the Plaintiff in their intended manner, without significant change in the products' condition. Plaintiff was unaware of the dangerous properties of the Defendants' AFFF or TOG products and relied on the Defendants' instructions as to the proper handling of the products.

12.     Plaintiff's consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF or TOG products caused Plaintiff to develop the serious medical conditions and complications.

4

13.     In approximately 1998, Plaintiff was diagnosed with thyroid cancer. Plaintiff suffered, and continues to suffer, from the effects of his illness, which was caused by exposure to Defendants' AFFF and/or TOG products.

14.     In approximately 1999, Plaintiff was diagnosed with hypothyroidism. Plaintiff suffered, and continues to suffer, from the effects of his illness, which was caused by exposure to Defendants' AFF and/or TOG products.

15.     In approximately 2023, Plaintiff was diagnosed with testicular cancer. Plaintiff suffered, and continues to suffer, from the effects of his illness, which was caused by exposure to Defendants' AFFF and/or TOG products.

16.     Through this action, Plaintiff seeks to recover compensatory and punitive damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF and/or TOG products at during the course of Plaintiff's Firefighting Activities. Plaintiff further seeks injunctive, equitable, and declaratory relief arising from the same.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000. This Court has jurisdiction over the commencement date of these actions pursuant to 42 U.S.C. § 9658, in the Superfund Amendments and Reauthorization Act of 1986 amendment to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

18.     Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3. Plaintiff states that but for the Order permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the Southern District of Ohio Cincinnati Division. Further,

in accordance with CMO No.3, Plaintiff designates the United States District Court for the Southern District of Ohio Cincinnati Division as the home venue. Venue is originally proper in the District Court pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Plaintiff was a resident and/or citizen, a substantial part of the events or omissions giving raise to the claims occurred, and Defendants conduct business within the district.

19.     This Court has personal jurisdiction over Defendants because at all times relevant to this lawsuit, Defendants manufactured, designed, marketed, distributed, released, promoted and/or otherwise sold, directly or indirectly, PFAS-containing AFFF or TOG products to various locations for use in fighting Class B fires, such that each Defendant knew or should have known that the products would be delivered to areas in the state of Ohio and used by Plaintiff during the course of performing Firefighting Activities. Therefore, the exercise of jurisdiction over Defendants by this Court does not offend traditional notions of fair play and substantial justice.

## PARTIES

20.     Plaintiff Ricardo Maxwell, Sr., is a resident and citizen of Cincinnati, Ohio. Plaintiff regularly used and was thereby directly exposed to AFFF and/or TOG in training and to extinguish fires during his working career as a firefighter, from approximately January 1980 to December 2013.

21.     Plaintiff was diagnosed with thyroid cancer, hypothyroidism, and testicular cancer as a result of his consumption, inhalation and/or dermal absorption of PFAS from Defendant's AFFF or TOG products.

22.     Defendant 3M Company, f/k/a Minnesota Mining and Manufacturing Company ("3M"), is a Delaware corporation and conducts business internationally and throughout the United

States, including in the states where Plaintiff was exposed. 3M has its principal place of business at 3M Center, St. Paul, Minnesota, Minnesota 55144.

23.     3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS that are used in firefighting training and response exercises ("Firefighting Activities") that are the subject of this Complaint. Further, from the 1960s until at least 2002, 3M designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

24.     Defendant AGC Chemicals Americas, Inc. ("AGC") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed, manufacturing glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates, including those used in AFFF products. AGC has its principal place of business at 55 E. Uwchlan Avenue, Suite 201, Exton, Pennsylvania 19341. Upon information and belief, AGC is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

25.     At all times relevant, AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in Firefighting Activities which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

26.     Defendant Allstar Fire Equipment Co. ("Allstar") is a California corporation and does business throughout the United States, including in the state where Plaintiff was exposed. Allstar has its principal place of business at 12328 Lower Azusa Road, Arcadia, CA 91006.

27.     At all times relevant, Allstar designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in Firefighting Activities which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

28.     Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173. Amerex is a manufacturer of firefighting products. Upon information and belief, Amerex acquired Solberg Scandinavian AS, one of the largest manufacturers of AFFF products in Europe.

29.     At all times relevant, Amerex designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Amerex designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

30.     Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Archroma has its principal place of business at 5435 77 Center Drive, Suite 10, Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed when Clariant Corporation divested its textile chemicals, paper specialties, and emulsions business to SK Capital Partners.

31.     At all times relevant, Archroma designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Archroma designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

32.     Defendant Arkema, Inc. ("Arkema") is a corporation Pennsylvania organization and does business throughout the United States, including in the states where Plaintiff was exposed. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, PA 19406. Upon information and belief, the assets of Arkema's fluorochemical business were purchased by Defendant DuPont in 2002.

33.     At all times relevant, Arkema, Inc. designed, manufactured, marketed, distributed, and sold fluor surfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

34.     Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. Upon

information and belief, BASF is the successor-in-interest to Swiss chemical company Ciba Holding, Inc, Ciba Corporation, Ciba-Geigy Corporation, and Ciba Specialty Chemicals Corporation.

35.     At all times relevant, BASF designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, BASF designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

36.     Defendant Carrier Fire & Security Americas Corporation (f/k/a UTC Fire & Security Americas Corporation) ("Carrier Fire") is a Delaware corporation and does business throughout the United States, including the states where Plaintiff was exposed. Carrier Fire has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

37.     At all times relevant, Carrier Fire designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Carrier Fire designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

38.     Defendant Carrier Global Corporation ("Carrier Global") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was

10

exposed. Carrier Global has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418. Upon information and belief, Carrier Global was formed in 2020 when Defendant United Technologies Corporation spun off its fire and security business before merging with Raytheon Company, and Carrier Global became the parent company of Kidde-Fenwal, Inc., a manufacturer of AFFF. Upon information and belief, Kidde-Fenwal, Inc., is the successor in interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam System, Inc.). Upon information and belief, Carrier Global is currently the ultimate corporate parent and owner of Carrier Fire & Security Americas Corporation, and Carrier Fire & Security Corporation and was the corporate parent and owner of Kidde-Fenwel, Inc. prior to the bankruptcy filing.

39.     At all times relevant, Carrier Global designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Carrier Global designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

40.     Defendant CB Garment, Inc. ("CrewBoss") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. CrewBoss has its principal place of business at 830 Wilson Street, Eugene, Oregon 97402.

41.     At all times relevant, CrewBoss developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

42.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

43.     At all times relevant, ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

44.     Defendant Chemguard, Inc. ("Chemguard") is a Texas corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Upon information and belief, Chemguard was acquired by Tyco International Ltd. in 2011 and is a subsidiary of Johnson Controls International PLC. Upon information and belief, Chemguard acquired Ciba's fluorosurfactants business in 2003.

45.     At all times relevant, Chemguard designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Chemguard designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

46.     Defendant Chemicals, Incorporated ("Chemicals, Inc.") is a Texas corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Chemicals, Inc. has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

47.     At all times relevant, Chemicals, Inc. designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Chemicals, Inc. designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

48.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, and does business throughout the United States, including in the states where Plaintiff was exposed. Chubb is a citizen of the United Kingdom, with its principal place of business in Blackburn, Lancashire, England. It is registered with Companies House in the United Kingdom, having registered number 134210, with its registered office at Chubb House, Shadsworth Road, Blackburn, Lancashire, England, BB1 2PR.

49.     At all times relevant, Chubb designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Chubb designed, marketed, developed, manufactured,

distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

50.     Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Clariant has its principal place of business at 500 Morehead Street, Suite 400, Charlotte, North Carolina 28202. Upon information and belief, Clariant was formerly known as Sandoz Chemical Corporation and as Sodyeco, Inc.

51.     At all times relevant, Clariant designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Clariant designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

52.     Defendant Corteva, Inc. ("Corteva") is a Delaware corporation that conducts business throughout the United States, including in the states where Plaintiff was exposed. Its principal place of business is 974 Centre Road, Wilmington, Delaware 19805. Upon information and belief, Corteva was formed in February 2018 as a wholly-owned subsidiary of DowDuPont. On June 1, 2019, following a distribution to DowDuPont stockholders, DowDuPont spun off Corteva as a new, publicly traded company, which currently holds DuPont as a subsidiary. In connection with these transfers, Corteva assumed certain DuPont liabilities.

53.     At all times relevant, Corteva designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Corteva designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

54.     Defendant Daikin America, Inc. ("Daikin") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Daikin has its principal place of business at 20 Olympic Drive, Orangeburg, New York 10962. Upon information and belief, Daikin America, Inc. was established in 1991 and is a subsidiary of Daikin Industries Ltd., a corporation organized under the laws of Japan, having its principal place of business in Osaka, Japan.

55.     At all times relevant, Daikin developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

56.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Deepwater's principal place of business is at 196122 E County Road 40, Woodward, Oklahoma 73801.

57.     At all times relevant, Deepwater designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities,

which is the subject of this Complaint. Further, Deepwater designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

58.    Defendant Dupont de Nemours, Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. DowDuPont, has its principal place of business at 974 Centre Road, Wilmington, Delaware 19805. DowDuPont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers. On June 1, 2019, DowDuPont was the surviving entity after the spin-off of Corteva. It retained assets in the specialty products business lines following the spin-off as well as the balance of the financial assets and liabilities of E.I. DuPont de Nemours and Company not assumed by Corteva.

59.    At all times relevant, DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

60.    Defendant Dynax Corporation ("Dynax") is a Delaware corporation that conducts business throughout the United States, including in the states where Plaintiff was exposed. Its principal place of business is 103 Fairview Park Dr., Elmsford, NY 10576..

61.     At all times relevant, Dynax designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Dynax designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

62.     Defendant EIDP, Inc. (f/k/a E.I. du Pont de Nemours and Company) ("DuPont"), is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. DuPont has its principal place of business at 974 Centre Road, Wilmington, Delaware 19805. DuPont is a successor-in-interest to DuPont Chemical Solutions Enterprise, a Delaware corporation with its principal place of business in Delaware.

63.     At all times relevant, DuPont designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint in such a way as to result in the contamination of Plaintiff's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body.

64.     Further, DuPont designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

65. Defendant Globe Manufacturing Company LLC ("Globe") is a New Hampshire corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Globe has its principal place of business at 37 Loudon Road, Pittsfield, New Hampshire 03263.

66. At all times relevant, Globe developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

67. Defendant Honeywell Safety Products USA, Inc. ("Honeywell") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Honeywell has its principal place of business at 855 South Mint Street, Charlotte, North Carolina 28202.

68. At all times relevant, Honeywell developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

69. Defendant Innotex Corp. ("Innotex") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Innotex has its principal place of business at 2397 Harts Ferry Road, Ohatchee, Alabama 36271.

70. At all times relevant, Innotex developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

71. Defendant Johnson Controls, Inc. ("Johnson Controls") is a Wisconsin corporation and does business throughout the United States, including in the states where Plaintiff was

exposed. Johnson Controls has its principal place of business at 5757 North Green Bay Avenue, Milwaukee Wisconsin 53209.

72.     At all times relevant, Johnson Controls developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

73.     Defendant Kidde PLC, Inc. ("Kidde PLC") is a subsidiary of Carrier Global Corporation ("Carrier Global"). Kidde is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Kidde PLC has its principal place of business at 1521 Concord Pike Suite 201, Wilmington, DE 19803.. Upon information and belief, Kidde PLC was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

74.     Kidde PLC designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Kidde PLC designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

75.     Defendant L.N. Curtis & Sons ("L.N. Curtis") is a California corporation and does business throughout the United States, including in the states where Plaintiff was exposed. L.N. Curtis has its principal place of business at 185 Lennon Lane, Suite 110, Walnut Creek, California 94598.

76.     At all times relevant, L.N. Curtis developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

77.     Defendant Mallory Safety and Supply LLC ("Mallory") is a limited liability company doing business throughout the United States, including in the states where Plaintiff was exposed. As a limited liability company, Mallory's citizenship is determined by the citizenship of each of its members. Upon information and belief, Mallory is a citizen of Washington and Oregon. Mallory's principal place of business is located at 1040 Industrial Way, Longview Washington 98632. Based upon a search of publicly available sources, none of Mallory's members are citizens of the same state as Plaintiff.

78.     At all times relevant, Mallory developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in Turnout Gear for use in Firefighting Activities.

79.     Defendant Matlick Enterprises, Inc. ("Matlick") is a New York corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Matlick has its principal place of business at 335 N 4th Avenue, Tucson, Arizona 85705.

80.     At all times relevant, Matlick developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in Turnout Gear for use in Firefighting Activities.

81.     Defendant Milliken & Company ("Milliken") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Milliken has its principal place of business at 920 Milliken Road, Spartanburg, South Carolina 29303.

82.    At all times relevant, Milliken developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

83.    Defendant Mine Safety Appliances Co., Inc. ("MSA") is a Pennsylvania corporation and does business throughout the United States, including in the states where Plaintiff was exposed. MSA has its principal place of business at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania, 16066.

84.    At all times relevant, MSA developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS material, and products containing PFAS in turnout gear for use in Firefighting Activities.

85.    Defendant Municipal Emergency Services, Inc. ("MES") is a Nevada corporation and does business throughout the United States, including in the states where Plaintiff was exposed. MES has its principal place of business at 12 Turnberry Lane, Sandy Hook, Connecticut 06482.

86.    At all times relevant, MES developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

87.    Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

88.    At all times relevant, Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise

handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities and by members of the military.

89.     Defendant National Foam, Inc. ("National Foam") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. National Foam has its principal place of business at 141 Junny Road, Angier, North Carolina, 27501.

90.     Upon information and belief, National Foam is a subsidiary of Angus International Safety Group, Ltd. and is the Successor-in-Interest to Angus Fire Armour Corporation and manufactures the Angus brands of products.

91.     At all times relevant, National Foam designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, National Foam designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

92.     Defendant Pacific Avenue Capital Partners Management Company LLC, ("Pacific Avenue") is a Delaware corporation and does business globally and throughout the United States, including in the states where Plaintiff was exposed. Pacific Avenue has its principal place of business at 1230 Rosecrans Ave. #520, Manhattan Beach, CA 90266. Pacific Avene purchased

Kidde-Fenwal, Inc. ("Kidde-Fenwal") on April 2, 2024 after approval from the United States Bankruptcy Court for the District of Delaware. Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam Systems, Inc.) (collectively, "Kidde/Kidde Fire") and manufactured and sold AFFF. Kidde-Fenwal filed for relief under Chapter 11 of the United States Bankruptcy Code on May 14, 2023.

93.    The purchase of Kidde-Fenwal by Pacific Avenue led to the creation of Kidde Global Solution in December 2024.

94.    At all times relevant, Kidde-Fenwal and its successors designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in Firefighting Activities which are the subject of this Complaint. Further, Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

95.    Defendant PBI Performance Products, Inc. ("PBI") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. PBI has its principal place of business at 9800-D Southern Pine Boulevard, Charlotte, North Carolina 28273.

96.    At all times relevant, PBI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

97.    Defendant Perimeter Solutions LP ("Perimeter") is a limited partnership doing business throughout the United States, including in the states where Plaintiff was exposed. As a

limited partnership, Perimeter's citizenship is determined by the citizenship of each of its members. The sole member of Perimeter is Perimeter Solutions, Inc., a resident of Delaware. Perimeter's principal place of business is at 8000 Maryland Avenue, Suite 350, St. Louis, Missouri 63105. Upon information and belief, based upon a search of publicly available sources, the sole member of Perimeter is not a citizen of the same state as Plaintiff.

98.    At all times relevant, Perimeter developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

99.    Defendant Ricochet Manufacturing Co., Inc. ("Ricochet") is a Pennsylvania corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Ricochet has its principal place of business at 4700 Wissahickon Ave, Philadelphia, Pennsylvania 19144.

100.    At all times relevant, Ricochet developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

101.    Defendant Safety Components Fabric Technologies, Inc. ("SCI") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. SCI has its principal place of business at 40 Emery Street, Greenville, South Carolina 29605.

102.    At all times relevant, SCI developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

103.    Defendant Southern Mills, Inc. ("Southern Mills") is a Georgia corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Southern Mills has its principal place of business at 6501 Mall Boulevard, Union City, Georgia 30291.

104.    At all times relevant, Southern Mills developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

105.    Defendant Stedfast USA, Inc. ("Stedfast") is a Delaware corporation and does its business throughout the United States, including in the states where Plaintiff was exposed. Stedfast has its principal place of business at 800 Mountain View Drive, Piney Flats, Tennessee 37686.

106.    At all times relevant, Stedfast developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

107.    Defendant The Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS-related liabilities.

108.    At all times relevant, Chemours designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Chemours designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

109.    Defendant The Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Chemours FC has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899. Chemours FC is a subsidiary of The Chemours Company.

110.    At all times relevant, Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

111.    Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a limited partnership doing business throughout the United States, including in the states where Plaintiff was exposed. Tyco has its principal place of business at PO Box 3038, Boca Raton, FL 33431.

112.    Upon information and belief, Tyco is the Successor-in-Interest to The Ansul Company ("Ansul"), having acquired Ansul in 1990.

113.    Beginning in or around 1975, Ansul manufactured, distributed, and/or sold AFFF that contained PFAS. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute, and/or sell AFFF that contained PFAS.

114.    Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF products through its Chemguard Specialty Chemicals division.

115.    At all times relevant, Tyco and/or Ansul designed, marketed, developed, manufactured, distributed released, trained users on, produced instructional materials for, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint. Further, Tyco and/or Ansul designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities and members of the military.

116.    Defendant United Technologies Corporation (n/k/a RTX Corporation) ("United Technologies") is a foreign corporation organized and existing under the laws of the state of Delaware and conducts business throughout the United States, including the states where Plaintiff was exposed. United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, Connecticut 06032.

117.    At all times relevant, United Technologies designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS that is used in Firefighting Activities, which is the subject of this Complaint in such a way as to result in the contamination of Plaintiff's blood and/or body with PFAS, and the biopersistence and bioaccumulation of such PFAS in his blood and/or body. Further, United Technologies designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for,

promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities.

118.    Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation and does business throughout the United States, including the states where Plaintiff was exposed. UTC has its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418. Upon information and belief, UTC was a division of United Technologies Corporation.

119.    At all times relevant, UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in Firefighting Activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in Firefighting Activities and by members of the military.

120.    Defendant Veridian Limited ("Veridian") is an Iowa corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Veridian has its principal place of business 3710 West Milwaukee Street, Spencer, Iowa 51301.

121.    At all times relevant, Veridian developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

122.    Defendant W.L. Gore & Associates, Inc. ("Gore") is a Delaware corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Gore has its principal place of business at 555 Paper Mill Road, Newark, Delaware 19711.

28

123.    At all times relevant, Gore developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

124.    Defendant Witmer Public Safety Group, Inc. ("Witmer") is a Pennsylvania corporation and does business throughout the United States, including in the states where Plaintiff was exposed. Witmer has its principal place of business at 104 Independence Way, Coatesville, Pennsylvania 19320.

125.    At all times relevant, Witmer designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in Firefighting Activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in Firefighting Activities.

126.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

127.    Plaintiff alleges that each named Defendant is in some manner responsible for the acts alleged herein and that they directly and proximately caused Plaintiff's injuries, as alleged herein.

128.    Plaintiff alleges that each named Defendant derived substantial revenue from the PFAS, PFAS materials, and products containing PFAS in AFFF or TOG products that Defendants designed, manufactured, tested, packaged, promoted, marketed, advertised, distributed, labeled, and/or sold within those states and locations where Plaintiff was exposed.

129.    Defendants expected or should have expected their acts to have consequences including within those states and locations where Plaintiff was exposed and derived substantial revenue from interstate commerce.

130.    Defendants purposefully availed themselves of the privilege of conducting activities including within those states and locations where Plaintiff was exposed, thus invoking the benefits and protections of its laws.

131.    All references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

132.    The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein jointly and severally, unless otherwise stated, who designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that is used in firefighting training and response exercises which are the subject of this Complaint, jointly and severally, unless otherwise stated.

133.    The term "TOG Defendant" or "TOG Defendants" refers to all Defendants named herein who developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in Firefighting Activities.

## **FACTUAL ALLEGATIONS**

### **A.  The Fluorochemicals: PFOA and PFOS**

134.    Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group. The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent. Fluorochemical products that contain eight carbon-fluorine bonds are sometimes referred to as "C8."

135.    Fluorochemical products are highly water soluble, which facilitates the ease at which they spread throughout the environment, contaminating soil, groundwater, and surface water. This mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.

136.    Fluorochemical products are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

137.    Fluorochemical products are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposure.

138.    Since they were first produced, information has emerged showing negative health effects caused by exposure to fluorochemical products.

139.    According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure to fluorochemical products over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects, and other effects (e.g., cholesterol changes).

**B. PFAS/AFFF and their Hazardous Effects on Humans**

140.    PFAS are a group of chemical compounds whose molecules consist of nearly indestructible chains of fluorine and carbon atoms. PFAS are entirely human-made and do not otherwise exist.

141.    Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found, detected, or were present in human blood.

142.    There is no naturally occurring "baseline," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable as a direct and proximate result of the acts and/or omissions of Defendants

143.    AFFF is a mixture of chemicals, including PFAS, used to put out petroleum- based fuel and other flammable liquid fires. AFFF lowers surface tension of the fuel, which starves a fire of its oxygen supply. While the fluorinated compounds in AFFF work well to extinguish fires, they are not biodegradable. These toxic chemicals accumulate and contaminate the bodies of animals and humans who come in contact with or consume them.

144.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and other parts of the world. AFFF contains PFAS, which are highly fluorinated synthetical chemical compounds whose family includes PFOS and PFOA.

145.    The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA and/or PFOS.

146.    PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

147.   All other Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

148.   AFFF can be made without PFOA, PFOS, or their precursor chemicals. Fluorine-free foams and short-chains foams do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

149.   When used as the Defendants intended and directed, Defendants' AFFF products release PFOA, PFOS, and/or their precursor chemicals into the environment.

150.   Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

151.   AFFF and PFAS are associated with various adverse health effects in humans.

152.   Due to the chemicals' persistent nature, among other things, these chemicals have and continue to cause injury and damage to Plaintiff.

**C.     PFAS-Containing Turn Out Gear**

153.   During firefighting training and when responding to fires and performing fire extinguishment, firefighters wear turnouts that are intended to provide a degree of thermal, chemical, and biological protection for a firefighter. Turnout gear components include individual components such as a helmet, hood, jacket, pants and suspenders, boots, and gloves. Each component of the jacket and pants are made of an outer layer, as well as several inner layers that include a moisture barrier and thermal liner which are meant to protect the firefighter from ambient heat.

154.    PFAS chemicals are used in turnout gear to impart heat, water, and stain resistance to the outer shell and moisture barrier of turnout gear.

155.    When exposed to heat, PFAS chemicals in the turnouts off-gas break down, and degrade into highly mobile and toxic particles and dust, exposing firefighters to PFAS chemicals, particles and dust, including through skin contact/absorption, ingestion (e.g., hand-to-mouth contact) and/or inhalation. Further, firefighter exposure to these highly mobile and toxic materials occurs through normal workplace activities, because particles or dust from the turnouts spreads to fire vehicles and fire stations, as well as firefighters' personal vehicles and homes.

156.    Such workplace exposure to PFAS or PFAS-containing materials has been found to be toxic to humans. As far back as a July 31, 1980, in an internal memo, DuPont officials described measures that were needed to prevent workplace exposure to PFOA, which they knew could permeate all protective materials, and noted that PFOA's toxicity varied depending on the exposure pathway, acknowledging that ingestion was "slightly toxic," dermal contact was "slightly to moderately toxic" and inhalation was "highly toxic." The memo concluded "continued exposure is not tolerable."

### D.    Defendants' Knowledge

157.    On information and belief, by the 1960s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

158.    By the 1970s, additional research and testing performed by some Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

159.    Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens which cause genetic damage.

160.    In 1980, 3M published data in peer-reviewed literature showing that humans retained PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.

161.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

162.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia. DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects - one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

163.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers. In an internal memo, 3M's medical officer warned "we must view this

present trend with serious concern. It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

164.    It was understood by AFFF Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans, unless the precise mechanism of action by which the tumors were caused was known and it was known that such mechanism of action would not be operative and/or occur in humans.

165.    By at least the end of the 1980s, AFFF Defendants, including at least 3M and DuPont, understood that, not only did these PFAS, including at least PFOA and PFOS, get into and persist and accumulate in human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life, meaning that they would take a very long time (years) before even half of the material would start to be eliminated (assuming no further exposures), which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposures continued.

166.    By at least the end of the 1990s, additional research and testing performed by AFFF Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

167.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; however, 3M's PFOS-based AFFF production did not fully phase out until 2002.

168.    Since 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold fluorochemical products, including Teflon nonstick cookware,

and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

169.    Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and/or sold fluorochemical products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in AFFF products.

170.    DuPont had been studying the potential toxicity of PFOA since at least the 1960s and knew that it was contaminating drinking water drawn from the Ohio River, and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, and/or the environment. B

171.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e) - the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

172.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture. The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy-induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions - high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

173.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

174.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold fluorochemical products; (2) failed to issue reasonable warnings and/or instructions on how fluorochemical products should be used and disposed of in AFFF products; (3) failed to recall and/or warn the users of fluorochemical products, which contained or degraded into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the fact that Defendants knew the foreseeable identities of the purchasers and end-users of the fluorochemical products, as well as its final fate in water, biota, and humans

175.    At all relevant times, Defendants, through their acts and omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the risks of exposure to AFFFs containing PFAS.

176.    At all relevant times, Defendants encouraged continued and increased use of PFAS by their customers and others and tried to encourage and foster the increased and further use of PFAS through the promotion of AFFFs to fire departments, including the ship where Clinton Cochran worked, while dismissing the risks.

177.    At all relevant times, Defendants were and/or should have been aware, or knew and/or should have known, that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials and/or sale of AFFFs

containing PFAS would result in the contamination of the blood and/or body of Plaintiff with PFAS, causing injury, irreparable harm, and/or unacceptable risk of such injury and/or irreparable harm to Plaintiff.

### E. Plaintiff's Exposure to PFAS-Containing AFFF

178.    Upon information and belief, the fire department where Plaintiff worked stored and used Defendants' PFAS-containing AFFF products which contained PFOA and/or PFOS chemicals and/or their precursor chemicals in firefighter training and response exercises while Plaintiff Ricardo Maxwell, Sr., served as a firefighter from approximately 1980 to 2013, thereby exposing Plaintiff to PFAS-containing AFFF.

179.    Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF products which contained PFOA and/or PFOS chemicals and/or their precursor chemicals to fire departments and the military.

180.    The descriptive labels and material safety data sheets for Defendants' AFFF products containing PFOA and/or PFOS and/or their precursor chemicals utilized by firefighters within the relevant states and locations did not reasonably or adequately describe AFFF's risks to human health

181.    Defendants each designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, and/or sold AFFFs containing PFAS in such a way as to cause the exposure to and ultimate contamination of Plaintiff Ricardo Maxwell Sr.'s blood and body with PFAS, resulting in persistence and accumulation of PFAS in his blood and body.

182.   The Defendants knew or should have known of the hazards of AFFF products containing PFOA and/or PFOS and/or their precursor chemicals when the products were manufactured.

183.   Plaintiff, Ricardo Maxwell, Sr., began his fire service career in 1980 with the Beekman Fire Department in Cincinnati, Ohio. Plaintiff was first exposed to AFFF on or about January 1980 while constantly spraying the substance during Firefighting Activities at Beekman Fire Department. The exposure to AFFF continued until at least 2013.

184.   During this time, Plaintiff also consistently wore Defendants' TOG containing PFAS chemicals while engaged in Firefighting Activities.

185.   Plaintiff worked as a firefighter at the Beekman Fire Department where he was exposed to AFFF and TOG containing dangerous substances on a regular basis.

186.   Throughout the time of his service, Plaintiff was exposed to Defendants' PFAS-containing AFFF and TOG products.

187.   During Plaintiff's exposure to Defendants' PFAS-containing AFFF products, the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body.

188.   At no point during his service did Plaintiff receive any warning Defendants' PFAS-containing AFFF products containing PFOA and/or PFOS and/or their precursor chemicals were toxic or carcinogenic.

189.   On or about June 1998, Plaintiff was diagnosed with thyroid cancer.

190.   Plaintiff subsequently underwent treatment for his thyroid cancer.

191.   It was not until after Plaintiff's diagnosis that he first discovered his thyroid cancer was caused by exposure to Defendants' PFAS-containing AFFF and TOG products.

192.    Plaintiff suffered, and continues to suffer, the effects of his cancer which was directly and proximately caused by his exposure to Defendants' PFAS-containing AFFF and TOG products.

193.    On or about January 1999, Plaintiff was diagnosed with hypothyroidism.

194.    Plaintiff subsequently underwent treatment for his hypothyroidism.

195.    It was not until after Plaintiff's diagnosis that he first discovered his hypothyroidism was caused by exposure to Defendants' PFAS-containing AFFF and TOG products.

196.    Plaintiff suffered, and continues to suffer, the effects of his hypothyroidism which was directly and proximately caused by his exposure to Defendant's PFAS-containing AFFF and TOG products.

197.    On or about February 2023, Plaintiff was diagnosed with testicular cancer.

198.    Plaintiff subsequently underwent treatment for his testicular cancer.

199.    It was not until after Plaintiff's diagnosis that he first discovered his testicular cancer was caused by exposure to Defendants' PFAS-containing AFFF and TOG products.

## COUNT I - NEGLIGENCE

200.    Plaintiff hereby incorporates by reference the allegations in counts 1-199 contained in the preceding paragraphs of this Complaint as if restated in full herein.

201.    AFFF and TOG Defendants had a duty to individuals, including Plaintiff, to exercise reasonable, ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to the PFAS-containing AFFF or TOG products.

202.     Defendants breached their duty of care and were negligent, grossly negligent, reckless and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of the AFFF or TOG products and/or underlying PFAS-containing chemicals used in AFFF or TOG production in one or more of the following respects:

a)     Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

b)     Failing to use reasonable care in the testing of the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

c)     Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

d)     Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

e)     Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

f)     Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, and warning; and

g)     Selling and/or distributing a product which was inherently dangerous to the public.

203.     As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

204.    Plaintiff hereby incorporates by reference the allegations in counts 1-203 contained in the preceding paragraphs of this Complaint as if restated in full herein.

205.    At all relevant times, AFFF and TOG Defendants possessed knowledge that the PFAS- and/or underlying chemicals and/or products containing AFFF and TOG products, which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiff having PFAS in his blood, and the bio-persistence and bio-accumulation of such PFAS in his blood.

206.    However, despite possessing such knowledge, AFFF and TOG Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiff accumulating PFAS in his blood and/or body, and such PFAS persisting and accumulating in his blood and/or body.

207.    Defendants did not seek or obtain permission or consent from Plaintiff to put or allow PFAS materials into Plaintiff's blood and/or body, or to persist in and/or accumulate in Plaintiff's blood and/or body.

208.    Entry into, persistence in, and accumulation of such PFAS in Plaintiff's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff's persons and unreasonably interferes with Plaintiff's rightful use and possession of Plaintiff's blood and/or body.

209.    At all relevant times, the PFAS present in the blood of Plaintiff originated from AFFF and TOG Defendants' acts and/or omissions.

43

210.    AFFF and TOG Defendants continue to knowingly, purposefully, and/or intentionally engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiff that results in persisting and accumulating levels of PFAS in his blood.

211.    Plaintiff, and any reasonable person, finds the contact at issue harmful and/or offensive.

212.    AFFF Defendants and TOG Defendants acted intentionally with the knowledge and/or belief that the contact, presence, and/or invasion of PFAS with, onto, and/or into Plaintiff's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

213.    AFFF and TOG Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff's blood and/or body.

214.    The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiff is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

215.    The presence of PFAS in the blood and/or body of Plaintiff has altered the structure and/or function of such blood and/or body parts and resulted in cancer and hypothyroidism.

216.    As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – PRODUCT LIABLITY – FAILURE TO WARN

217.    Plaintiff hereby incorporates by reference the allegations in counts 1-216 contained in the preceding paragraphs of this Complaint as if restated in full therein.

218.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

219.    Defendants are the manufacturers and/or distributors of the AFFFs and TOG containing PFAS to which Plaintiff Ricardo Maxwell, Sr., was exposed.

220.    Defendants are each the sellers of the AFFF and TOG products containing PFAS to which Plaintiff was exposed. Defendants sell AFFF and TOG products in the ordinary course of their business.

221.    Defendants, as manufacturers and sellers of AFFF and TOG products had a duty to provide adequate warnings or instructions about the dangers of their products. Defendants had this duty even if the product was perfectly designed and manufactured.

222.    Defendants' warning should have been the kind of warning or instruction which a reasonably prudent manufacturer or seller in the same or similar circumstances would have provided.

223.    Defendants' failure to adequately warn and/or instruct existed before the fluorochemical products left the Defendants' control.

224.    Defendants' AFFF and TOG products were not substantially altered after they left Defendants' control.

225.    Defendants knew, or in the exercise of ordinary care, should have known the exposure to PFAS-containing AFFF and TOG products presented a substantial danger when

individuals such as Plaintiff were exposed to said products because they are hazardous to human health and the environment

226.  The use of the AFFFs and TOG in training activities and routine firefighting activities was the purpose for which the AFFF and TOG products were intended and was reasonably foreseeable by Defendants. The AFFF and TOG products were used in substantially the same condition in which they were sold.

227.  Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF and TOG products, to which he was thereby exposed to Defendants' PFAS-containing AFFF and TOG products.

228.  A reasonable firefighter would not expect the AFFF and TOG products used in training activities and routine firefighting activities to expose him to a known carcinogen.

229.  Adequate instructions and warnings on the AFFF and/or TOG containing PFAS could have reduced or avoided these foreseeable risks of harm and injury to Plaintiff. If Defendants had provided adequate warnings:

    a) Plaintiff could have and would have taken measures to avoid or lessen exposure, and;

    b) end users and governments could have taken steps to reduce or prevent the release of PFAS into the blood and/or body of Plaintiff. Defendants' failure to warn was a direct and proximate cause of Plaintiff's injuries from PFAS that came from the use, storage, and disposal of AFFF and/or TOG containing PFAS. Crucially, Defendants' failure to provide adequate and sufficient warnings for the AFFF or TOG containing PFAS they designed, marketed, manufactured, distributed, released, promoted, and sold renders the AFFF or TOG a defective product.

230.  AFFF and TOG Defendants were negligent in their failure to provide Plaintiff with adequate warnings or instruction that the use of their AFFF and TOG products would cause PFAS to be released into the blood and/or body of Plaintiff.

231.    Defendants' failure to provide adequate and sufficient warnings for the AFFF and TOG products that they manufactured, marketed, and sold renders the products defective.

232.    As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

233.    As a result of the Defendants' manufacture, sale, and/or distribution of a defective product, Defendants are strictly liable in damages to Plaintiff.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – PRODUCT LIABLITY – DESIGN DEFECT

234.    Plaintiff hereby incorporates by reference the allegations in counts 1-233 contained in the preceding paragraphs of this Complaint as if restated in full herein.

235.    Plaintiff brings this cause of action pursuant to all relevant common law and state statutory provisions.

236.    At all times relevant, Defendants were regularly engaged in the design, formulation, production, creation, manufacture, construction, assembly, rebuilding, sale, distribution, preparation, and/or labeling of PFAS-containing AFFF and TOG products.

237.    At all times relevant, Defendants regularly participated in placing the PFAS-containing AFFF and TOG products into the stream of commerce throughout the United States, including those states and locations where Plaintiff lived and/or served.

238.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of AFFF and TOG products, Defendants owed a duty to not manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

239.    Plaintiff used Defendants' AFFF and TOG products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

240.    Defendants' AFFF and TOG products fail to meet the Plaintiff's reasonable expectation that said products are reasonably suitable and safe for human use or exposure.

241.    Defendants' AFFF and TOG products, when used as intended or in a reasonably foreseeable manner by Plaintiff did not perform as safely as an ordinary consumer would have expected because fluorochemical products are carcinogens and are otherwise harmful to human health and the environment.

242.    Defendants' defective design of the AFFF and TOG products was far more dangerous than an ordinary consumer, such as the Plaintiff would expect when used, as Plaintiff did, in an intended and reasonably foreseeable manner.

243.    Defendants knew or should have known:

   a.  exposure to AFFF or TOG containing PFAS is hazardous to human health;

   b.  the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and sold was hazardous to human health; and

   c.  the manner in which AFFF or TOG containing PFAS was designed, manufactured, marketed, distributed, and could and would release PFAS into Plaintiff and cause the exposure and bioaccumulation of these toxic and poisonous chemicals in the blood and/or body of Plaintiff.

244.    Knowing of the dangerous and hazardous properties of the AFFF and TOG products containing PFAS, AFFF and TOG Defendants could have designed, manufactured, marketed, distributed, and sold alternative designs or formulations of AFFF or TOG that did not contain

hazardous, toxic, and poisonous PFAS. These alternative designs and formulations were already available, practical, and technologically feasible.

245.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to Plaintiff caused by the AFFF and TOG Defendants and manufacture, marketing, distribution, and sale of AFFF and TOG containing hazardous, toxic, and poisonous PFAS.

246.    The risk of AFFF and TOG products were not obvious to users of the AFFF or TOG products, nor were they obvious to consumers or users in the vicinity of the AFFF and TOG use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals. Plaintiff could not have reasonably discovered the defects and risks associated with the use of PFAS-containing products and could not protect themselves from exposure to Defendants' PFAS-containing products.

247.    Defendants' AFFF and TOG products failure to perform safely was a substantial factor in causing Plaintiff's harm.

248.    As a direct result of AFFF and TOG products being utilized as the Defendants intended, PFAS and other chemicals

249.    But for Defendants' AFFF and TOG products failure to perform safely, Plaintiff would not have suffered the damages alleged herein.

250.    As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT V – STRICT LIABLITY (STATUTORY)

251.    Plaintiff hereby incorporates by reference all the allegations in counts 1-250 contained in the preceding paragraphs of this Complaint as if restated in full herein.

252.    Plaintiff asserts any and all remedies available under statutory causes of action from Plaintiff's state for strict liability against each AFFF and TOG Defendant.

253.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, manufacture, construction, assembly, rebuilding, sale, marketing, distribution, preparation, and/or labeling of PFAS-containing AFFF and TOG products.

254.    The AFFF and TOG products were in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by Defendants.

255.    Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF and TOG products to which he was thereby exposed to Defendants' PFAS-containing AFFF and TOG products.

256.     Plaintiff used Defendants' AFFF and TOG products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

257.     As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VI – STRICT LIABLITY (RESTATMENT)

258.    Plaintiff hereby incorporate by reference the allegations in counts 1-257 contained in the preceding paragraphs of this Complaint as if restated in full herein.

259.    Plaintiff brings strict product liability claims under the common law, Section 402A of the Restatement of Torts (Second), and/or Restatement of Torts (Third) against Defendants.

260.    The AFFF and TOG products were in a defective condition and unreasonably dangerous to users and/or consumers when designed, manufactured, marketed, sold, and/or distributed to the public by Defendants.

261.    Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF and TOG products to which he was thereby exposed to Defendants' PFAS-containing AFFF and TOG products.

262.    Plaintiff used Defendants' AFFF and TOG products in a reasonably foreseeable manner and without substantial changes in the condition in which the products were sold.

263.    Defendants had available reasonable alternative designs which would have made the AFFF or TOG products safer and would have most likely prevented the injuries and damages to the Plaintiff, thus violating state law and the Restatement of Torts.

264.    AFFF and TOG Defendants failed to properly and adequately warn and instruct Plaintiff as to the proper safety and use of the AFFF and TOG products.

265.    AFFF and TOG Defendants failed to properly and adequately warn and instruct Plaintiff regarding the inadequate research and testing of the products.

266.    AFFF and TOG Defendants products are inherently dangerous and defective, unfit and unsafe for their intended and reasonably foreseeable uses, and do not meet or perform to the expectations.

267.    As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VII – FRAUDULENT CONCEALMENT

268.    Plaintiff hereby incorporates by reference the allegations in counts 1-267 contained in the preceding paragraphs of this Complaint as if restated in full herein.

269.    At all times relevant, AFFF and TOG Defendants and knew that their products were defective and unreasonably unsafe for their intended purpose.

270.    For at least several decades, Defendants had knowledge or the means of knowledge that their PFAS-containing AFFF and TOG products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to PFAS-containing AFFF and TOG products and physical injuries in humans and animals.

271.    AFFF and TOG Defendants fraudulently concealed from and/or failed to disclose to or warn Plaintiff and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

272.     AFFF and TOG Defendants were under a duty to Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because:

a)   AFFF and TOG Defendants had a duty to Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because: AFFF and TOG Defendants were in a superior position to know the true quality, safety and efficacy of their AFFF and TOG products;

b)   AFFF and TOG Defendants knowingly made false claims about the safety and quality of the AFFF Defendants product in documents and marketing materials; and

c)   AFFF and TOG Defendants fraudulently and affirmatively concealed the defective nature of AFFF Defendants products from Plaintiff.

273.     AFFF and TOG Defendants knowingly, intentionally, maliciously, and/or willfully failed and/or refused to advise Plaintiff and the public of the dangers and/or health risks posed by Defendants' AFFF and TOG products.

274.     The facts concealed and/or not disclosed by AFFF and TOG Defendants to Plaintiff were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use AFFF Defendants products.

275.     Defendants withheld, misrepresented, and/or concealed information regarding PFAS-containing AFFF and TOG exposure from Plaintiff with the intention to mislead and/or defraud him into believing that his PFAS-containing AFFF and TOG exposure was not harmful, and to mislead and/or defraud him into continuing to be exposed to their PFAS-containing AFFF and TOG products.

276.     Defendants withheld, misrepresented, and/or concealed information regarding PFAS-containing AFFF and TOG exposure that was a substantial factor in causing Plaintiff's harm.

277.     As a direct and proximate result of Defendants' negligence, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment

of life, loss of care, comfort, economic loss, and damages, including but not limited to medical expenses, lost income, and/or damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT VIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES

278.     Plaintiff hereby incorporates by reference the allegations in counts 1-277 contained in the preceding paragraphs of this Complaint as if restated in full herein.

279.     At all times relevant, Defendants manufactured, marketed, labeled, and sold the AFFF or TOG products that have been previously alleged and described herein.

280.     At all times relevant, Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF or TOG products, Defendants knew of the use for which they were intended, and implied and/or expressly warranted that the products were merchantable, safe, and fit for their intended purpose.

281.     At the time Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF or TOG products, Defendants knew of the use for which they were intended, and implied and/or expressly warranted that the products were merchantable, safe, and fit for their intended purpose.

282.     Defendants warranted that the products were merchantable and fit for the particular purpose for which they were intended and would be reasonably safe. These warranties were breached and such breach proximately resulted in the injuries and damages suffered by Plaintiff.

283.    Plaintiff, as a firefighter, was an ordinary and foreseeable user and consumer of AFFF and TOG products to which he was thereby exposed to Defendants' PFAS-containing AFFF and TOG products.

284.    Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment and the implied and/or express warranties in using the products.

285.    Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the products when used for their intended purpose and were neither of merchantable quality nor safe for their intended use in that the products have a propensity to cause serious injury and pain, including thyroid cancer, testicular cancer,  and hypothyroidism.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IX – WILLFULL AND WANTON MISCONDUCT

286.    Plaintiff hereby incorporates by reference the allegations in counts 1-285 contained in the preceding paragraphs s of this Complaint as if restated in full herein.

287.    Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF or TOG products, including Plaintiff.

288.    AFFF and TOG Defendants breached the duty of care owed to the Plaintiff.

289.    The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the life, health, and safety of the end users of Defendants' AFFF or TOG products, including Plaintiff.

290.    As a proximate and foreseeable consequence of the actions of Defendants, Plaintiff was exposed to unreasonably dangerous toxic PFAS containing AFFF or TOG, which caused Plaintiff's cancer and hypothyroidism.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## CLAIM FOR PUNITIVE DAMAGES

291.    Plaintiff hereby incorporates by reference the allegations in counts 1-290 contained in the preceding paragraphs of this Complaint as if restated in full herein.

292.    At all times relevant, Defendants manufactured, marketed, and/or sold the PFAS-containing AFFF and TOG products to which Plaintiff was exposed and resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

293.    AFFF and TOG Defendants either knew or should have known that an increasing volume of industry research demonstrated that PFAS-containing products cause serious medical effects in humans who are exposed to them dermally, including thyroid cancer, testicular, cancer and hypothyroidism.

294.    AFFF and TOG Defendants have never warned the miliary, firefighters, or the broader public of the known health risks of AFFF and TOG products. AFFF and TOG Defendants concealed the risks of PFAS-containing products and actively represented that AFFF and TOG products did not present a risk of harm to the environment or human health.

295.    Defendants continued to manufacture, sell, market, distribute, design, formulate and/or supply AFFF and TOG products for years after learning of the significant risks to the environment and human health.

296.    Defendants' failure to disclose the information regarding the risks of AFFF and TOG products and their failure to provide adequate warnings and/or instructions as to these risks demonstrate Defendants' reckless disregard for the safety and welfare of the public, including the Plaintiff.

297.    Defendants' negligent, reckless, willful, fraudulent, and/or wanton actions and/or intentional failures to act caused Plaintiff to be exposed to fluorochemical products.

298.    Plaintiff is entitled to punitive damages because Defendants engaged in willful, wanton, malicious, fraudulent and/or reckless conduct, which includes but is not limited to:

   a) Issuing no warnings and failing to divulge material information concerning the danger to health that PFAS-containing AFFF and TOG products posed;

   b) Failing to prevent the foreseeable impacts of AFFF and TOG products exposure upon the Plaintiff; and

   c) Willfully withholding, misrepresenting, and/or concealing information regarding the danger of exposure to AFFF and TOG products from Plaintiff, other exposed individuals, and the public at large with the intention to mislead and/or defraud them into believing that their exposure to PFAS-containing AFFF and TOG products was not harmful, and to mislead and/or defraud them into continuing to purchase and use AFFF and TOG products

299.    As a proximate and foreseeable consequent of Defendants' negligent, reckless willful, fraudulent and/or wanton actions and/or intentional failures, Plaintiff was exposed to unreasonably dangerous toxic PFAS containing AFFF or TOG, which caused Plaintiff's cancer and hypothyroidism.

300.    As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' AFFF and TOG products and will continue to suffer serious, debilitating, and severe bodily injuries, mental anguish, and emotional distress relating to Plaintiff's bodily injuries caused by Defendants' AFFF and TOG products.

301.    Defendants have demonstrated a conscious disregard for the physical safety of Plaintiff and acted with implied malice, warranting the imposition of punitive damages.

302.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct. Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

## TOLLING OF THE STATUTE OF LIMITATIONS

### Discovery Rule Tolling

303.    Plaintiff had no way of knowing about the risk of serious injury associated with the use of and exposure to PFAS until very recently.

304.    Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to PFAS is harmful to human health.

305.    Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to PFAS; nor would a reasonable and diligent investigation by Plaintiff have disclosed that PFAS could cause personal injury.

306.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

307. All applicable statutes of limitations also have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

308. Instead of disclosing critical safety information regarding AFFF or TOG, Defendants have consistently and falsely represented the safety of AFFF or TOG products.

309. This fraudulent concealment continues through the present day.

310. Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Ricardo Maxwell, Sr., demands judgments against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

a) Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

b) Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

c) Punitive damages in an amount sufficient to punish Defendants and deter future similar conduct;

d) Reasonable fees for attorneys and expert witnesses;

e) Costs and disbursements of this lawsuit;

f) Interest on the damages according to law; and

g) Any other and further relief as the Court deems just, proper and equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues in the matter.

Dated: January 30, 2025

Respectfully submitted,

*/s/ Dana Lizik*
Dana Lizik (TX Bar 24098007)
**JOHNSON LAW GROUP**
2925 Richmond Ave., Ste. 1700
Houston, TX 77098
Phone: (713) 626-9336
dlizik@johnsonlawgroup.com

*Attorney for Plaintiff*